# FOR PUBLICATION



**FILED**

Sep 11 2013, 9:17 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN P. NICHOLS**
Anderson & Nichols
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW J. JANKOWSKI**
Kopka Pinkus Dolin & Eads, PC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KARI EVERHART,                     )
                                   )
    Appellant,                     )
                                   )
        vs.                      )      No. 84A01-1303-PL-128
                                   )
FOUNDERS INSURANCE COMPANY         )
                                   )
    Appellee.                      )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Phillip I. Adler, Judge
Cause No. 84D02-1109-PL-8980

**September 11, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Kari Everhart appeals from the court's grant of summary judgment in favor of Founders Insurance Company ("Founders") and from the denial of Everhart's motion to correct error. Everhart raises one issue which we revise and restate as whether the court erred in granting summary judgment. We affirm.

FACTS AND PROCEDURAL HISTORY

On March 14, 2009, an incident took place at Club Coyote in West Terre Haute, Indiana, in which Everhart sustained injuries including a broken elbow. At the time, specifically between January 10, 2009 and January 10, 2010, Club Coyote had insurance coverage provided by Founders under Policy Number CPIN000061 (the "Policy").[1] The Policy, under Section I discussing classes of coverage, states:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[2] . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. . . .

Appellant's Appendix at 36. Paragraph 2 of Coverage A listed exclusions denoting instances in which coverage under the Policy would not apply, specifically listing exclusions as Paragraphs 2.(a) through 2.(o). The Policy also contained an attached

---

[1] We observe that the named insured on the Policy is listed as "TOP HAT INC DBA CLUB KOYOTE." Appellant's Appendix at 33. We refer to the insured in this matter as "Club Coyote."

[2] The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Appellant's Appendix at 48.

2

endorsement entitled "INDIANA CGL ENDORSEMENT – ASSAULT AND/OR BATTERY EXCLUSION" (the "Endorsement"), which states the following:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusions are added to paragraph **2. Exclusions** of **SECTION I -- COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** . . . **:**

This insurance does not apply to:

**1. Assault and/or Battery/Negligent Hiring**
"Bodily injury". . . arising from:
      (a) assault and/or battery committed by any insured, any "employee" of an insured, or any other person;
      (b) The failure to suppress or prevent assault and/or battery by any person in subparagraph 1.(a) above;
      (c) The selling, serving or furnishing of alcoholic beverages which result in an assault and/or battery; or
      (d) The negligent:
            (1) Employment;
            (2) Investigation;
            (3) Supervision;
            (4) Reporting to the proper authorities, or failure to so report; or
            (5) Retention

      of or by a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by subparagraphs 1.(a) through 1.(c) above.

Id. at 84.

On March 4, 2011, Everhart filed a complaint for damages against Club Coyote in Cause No. 84D02-1103-CT-1708 (the "Underlying Action").[3] On September 27, 2011, Founders filed its complaint for declaratory judgment in Cause No. 84D02-1109-PL-

---

[3] Specifically, Everhart brought suit against Club Coyote and Paul and Nancy Allsup, the owners of the premises of Club Coyote.

8980 (the "Declaratory Judgment Action") against Everhart and Club Coyote seeking a declaration that it had no duty to defend or indemnify either party in the Underlying Action.[4] On October 24, 2011, Club Coyote filed its answer to Founders' complaint, and, on November 16, 2011, Everhart timely filed her answer. On July 3, 2012, Founders filed a motion for summary judgment, supporting memorandum, and designation of evidence. On October 5, 2012, Everhart filed her response to Founders' summary judgment motion along with a designation of evidence. Everhart designated, as Exhibit B, her answers to interrogatories submitted in the Underlying Action. Interrogatory Number 6 ("Interrogatory No. 6") asked for Everhart to "[d]escribe in detail how the incident described in [her] Complaint happened, including what [she was] doing immediately before and leading up to the time the accident occurred," and she responded as follows:

> I was standing at the very left end of the long bar. I looked to the middle of the bar where patrons are served and saw the patron who was shoved into me & the bartender Mike Davis were sharing some words. The Mike [sic] grabbed the patron by the back of the head and bounced his head off of the bar approximately 3 to 4 times & then shoved him into a small crowd of people standing in front of the bar. The patron was then shoved a second time by Brice Elson, in my direction. The patron then stumbled & fell violently grabbing me by the left shoulder, bringing me to fall underneath of him,- throwing my right arm out to catch my fall, breaking my arm in several places.

Id. at 106.

---

[4] Specifically, Founders names in its complaint for declaratory judgment Everhart, "Top Hat, Inc. d/b/a Club Koyote," and the Allsups. Appellant's Appendix at 28. On February 8, 2012, the Allsups were voluntarily dismissed by Founders pursuant to Ind. Trial Rule 41(A)(2) based upon a January 26, 2012 Fact Stipulation by All Parties stating that the Allsups were not entitled to defense or indemnity from Founders in the Underlying Action.

The court held a summary judgment hearing in the Declaratory Judgment Action on November 20, 2012, and on November 26, 2012, the court granted summary judgment in Founders' favor, specifically finding that "[i]n viewing [Everhart's] answer to [Interrogatory No. 6] . . . it would appear that her description of what occurred on the evening in question which resulted in her alleged injury and damages does fit within the definition [of battery] as described by the Indiana Court of Appeals" in the case of Singh v. Lyday, 889 N.E.2d 342 (Ind. Ct. App. 2008), reh'g denied, trans. denied.[5] Id. at 7. On December 17, 2012, Everhart filed her motion to correct error, Founders filed its response to Everhart's motion to correct error on January 4, 2013, and, following a hearing on the motion on February 13, 2013, the court entered an order denying Everhart's motion on February 19, 2013.

ISSUE AND STANDARD OF REVIEW

The issue is whether the court erred in granting Founders' motion for summary judgment. When a trial court's ruling granting or denying summary judgment is challenged on appeal, the procedure and standard under Indiana law is clear. Our standard of review is the same as it is for the trial court. Kroger Co. v. Plonski, 930 N.E.2d 1, 4 (Ind. 2010). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with

---

[5] Although the court's grant of summary judgment was also entered against Club Coyote, Club Coyote has not sought review of the court's order and is not a party to this appeal.

5

evidence establishing the existence of a genuine issue of material fact. Id. We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. Plonski, 930 N.E.2d at 5. An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, see Ind. Trial Rule 56(H), but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling, see Woodruff v. Ind. Family & Soc. Servs. Admin., 964 N.E.2d 784, 790 (Ind. 2012) ("We will reverse if the law has been incorrectly applied to the facts. Otherwise, we will affirm a grant of summary judgment upon any theory supported by evidence in the record."), cert. denied, 133 S. Ct. 233 (2012); Wagner v. Yates, 912 N.E.2d 805, 811 (Ind. 2009) ("[W]e are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence.").

The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

Also, we generally review rulings on motions to correct error for an abuse of discretion. Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008),

6

reh'g denied. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied.

The provisions of an insurance contract are subject to the same rules of construction as are other contracts. Cincinnati Ins. Co. v. Adkins, 935 N.E.2d 190, 192 (Ind. Ct. App. 2010). Thus, the construction of Founders' Policy presents a pure question of law that we review *de novo*. Id. "If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning." Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 252 (Ind. 2005). Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. Id. "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." Rogers v. Lockard, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528 (Ind. 2002), reh'g denied. "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010).

Also, in the context of an insurance policy, "[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer" and "[t]his is particularly true where a policy excludes coverage." Am. States Ins. Co. v. Kiger, 662 N.E.2d 945, 947 (Ind. 1996), reh'g denied. "This strict construal against the insurer is driven by the fact

7

that the insurer drafts the policy and foists its terms upon the customer. 'The insurance companies write the policies; we buy their forms or we do not buy insurance.'" Id.

DISCUSSION

Everhart argues that "[t]he exclusion cited by Founders is not applicable in the instant case" because "the proximate cause of her injuries and damages was negligence on the part of . . . Club Coyote" and "the exclusion relied upon . . . is for intentional acts." Appellant's Brief at 6. Everhart argues that "[c]learly, [she] has never contended that any employee or patron of . . . Club Coyote did anything intentionally," and she points specifically to Interrogatory No. 6 for this proposition. Id.

Founders argues that "[t]he admissions contained in the parties' pleadings demonstrate that there is no dispute that Everhart sustained the alleged injuries . . . as a result of a battery" and it is "axiomatic that an allegation in a pleading which is left uncontested is deemed admitted under the rule governing the effect of failure to deny." Appellee's Brief at 8-9. Founders underscores that Everhart admitted in her answer the allegations contained in Paragraphs 7 and 8 of the Founders' complaint for declaratory judgment which stated that Everhart was assaulted and/or battered while working at Club Coyote which resulted in the damages in the underlying case, and Founders argues that the Endorsement "is directly applicable to such claims . . . ." Id. at 9. Founders argues that the conduct described by Everhart in her answer to Interrogatory No. 6 is within the scope of the definition of battery under Indiana law, that coverage for her injuries is excluded by the plain language of the Endorsement to the policy issued by Founders to

8

Club Coyote, and that accordingly summary judgment in Founders' favor was appropriate.

As noted by Founders in its arguments and by the trial court in its order, this court has previously recognized that Indiana follows the definition of battery provided by the Restatement (Second) of Torts as follows:

> One is liable for the tort of battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) (quoting Restatement (Second) of Torts § 13 (1965)). "A touching, however slight, may constitute an assault and battery." *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007).

Singh, 889 N.E.2d at 360. Also, Subsection (a) of the Endorsement excludes coverage for batteries "committed by any insured, any 'employee' of an insured, or any other person." Appellant's Appendix at 84.

This case turns on whether Everhart's version of the events of what transpired and caused her injuries, as stated in Interrogatory No. 6, was a battery, because, if so, coverage under the Policy would be excluded pursuant to the Endorsement. Again, Interrogatory No. 6 states:

> I was standing at the very left end of the long bar. I looked to the middle of the bar where patrons are served and saw the patron who was shoved into me & the bartender Mike Davis were sharing some words. The Mike [sic] grabbed the patron by the back of the head and bounced his head off of the bar approximately 3 to 4 times & then shoved him into a small crowd of people standing in front of the bar. The patron was then shoved a second time by Brice Elson, in my direction. The patron then stumbled & fell violently grabbing me by the left shoulder, bringing me to fall underneath of him,- throwing my right arm out to catch my fall, breaking my arm in several places.

9

Id. at 106.

Thus, according to Everhart, the bartender grabbed a patron by the head, bounced his head about three or four times against the bar, and shoved the patron into a crowd of people. Then, a second person, Brice Elson, shoved the patron in her direction, and the patron grabbed her as he fell and brought Everhart to the ground, resulting in her breaking her arm. The record is not clear whether or not Elson was an employee of the insured, Club Coyote, but as noted above such a distinction is immaterial in deciding this case. The Endorsement excludes coverage for batteries committed by both employees of the insured and any other persons, and, as noted by Indiana's definition of battery, a battery results if an individual acts intending to cause harmful contact with not only the person contacted, but also a *third person*, and harmful contact directly or indirectly results. There is no dispute that Elson intentionally pushed the patron, a third person, that the patron came into contact with Everhart, and that Everhart was harmed as a result by breaking her arm, and accordingly, Everhart was the victim of a battery on the premises of Club Coyote. We therefore conclude that the court did not err when it granted summary judgment in favor of Founders. See Fordyce v. Montgomery, 424 S.W.2d 746, 751 (Mo. Ct. App. 1968) (noting that if the defendants had intended to cause a battery on another but "succeeded by mistake in injuring the plaintiff, then they were liable to the plaintiff to the same extent as if he had been their intended victim . . .").

CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Founders and its denial of Everhart's motion to correct error.

10

Affirmed.

NAJAM, J., and MATHIAS, J., concur.